ADAMS, Justice.
Parker Neely, Jr., appeals from a summary judgment entered by the Circuit Court of Jefferson County against him and in favor of plaintiff, Central Bank of the South. We affirm.
According to the affidavits submitted in this case, on December 16, 1981, Benchmark, Inc., executed and delivered three promissory notes to plaintiff, Central Bank of the South. At the same time, defendant, Parker Neely, Jr., entered into an agreement with Central Bank whereby he agreed to personally guarantee all obligations of Benchmark, Inc.
Subsequent to the execution of the notes and Neely’s guaranty, Benchmark defaulted in its payments on the notes. Central Bank then made a demand on Benchmark and Neely for payment of the amount due on the notes; after receiving no payment from either party, Central Bank filed suit against both parties on March 27, 1984.[1]
In his answer, Neely denies that he owes Central Bank any money. His sole support for this contention is his own affidavit, which reads:
In connection with the notes sued upon in this action I admit the signing thereof by Benchmark, Inc. and the fact that I guaranteed the notes. The corporation received the funds represented by the notes and ... a default in the repayment thereof by the corporation occurred.
Subsequent thereto, prior to January 1, 1985, I was asked by Lee Benton, who represented himself as the attorney for and agent of Central Bank of the South, to attend a meeting to discuss my assets and the assets of the corporation. At such meeting I revealed to Mr. Benton the existence of substantial assets of mine and the corporation’s.
These assets consisted of accounts receivable from solvent businesses and individuals in the approximate amount of $400,000.00. This amount was far in excess of the amount due Central Bank of the South under the notes sued upon herein.
An agreement was reached at such meeting that Central Bank of the South would accept all of the receivables in exchange for a satisfaction of the debt due the bank.
As a result, I immediately turned over to Mr. Benton all of the assets described above in compromise of the bank’s claim against me.
Central Bank submitted an affidavit of its “recovery officer,” James Wright, which established the total amount due to Central Bank as being $41,259.10. Central Bank also submitted an affidavit from Miles Huffstutler, the attorney who was representing Neely at the June 15, 1984, meeting between Neely and Lee Benton, attorney for Central Bank. In his affidavit, Huffstutler states:
The substance of the meeting generally concerned the quality and quantity of assets of the Corporation, such as accounts receivable and other assets, if any. To the best of my recollection and knowledge, there was no monetary figure quoted during this meeting that would have settled the case. Lee R. Benton, one of the attorneys for the plaintiff at that time, requested that a list of the accounts receivable of Benchmark, Inc. or a list of any assets which *1010 could be used to satisfy the debt, be forwarded to him at the earliest possible time.
To the best of my knowledge and recollection, Lee Benton stated, in substance and in part, that he would take whatever lists were provided to him, review this list or lists with his client and attempt to make a determination as to whether or not any of these accounts appeared to have any true worth. Lee Benton told Parker W. Neely, Jr., that he, Parker W. Neely, Jr., should continue to make any and all efforts to pursue these accounts himself.
To the best of my understanding, interpretation, perception, knowledge and belief, Lee R. Benton did not, on June 15, 1984, make any promise, contract, novation, or any intimation that he did or would accept the accounts receivable of Benchmark, Inc. in return for the release of the personal guaranty of Parker W. Neely, Jr. on these debts.
On or about June 15, 1984, there was no written memorandum, agreement or contract made whereby Lee R. Benton agreed or would agree to accept the accounts receivable of Benchmark, Inc. and thereby release Parker W. Neely, Jr. from any personal liability on these debts.
To the best of my knowledge and belief, there has not been, either prior to or after June 15, 1984, a written agreement that would release Parker W. Neely, Jr. from full or partial liability on the personal guaranty. I do not have now nor have I ever had in my possession any such agreement or memorandum.
I was present during the entire meeting on June 15,1984, with Parker Neely, Jr. and his wife, Donna. I at no time entered into an agreement on behalf of either of these parties whereby Central Bank would accept anything other than full payment under the promissory notes and guaranty agreement. At no time did I enter into any agreement on behalf of Benchmark, Inc. or Parker Neely, Jr., whereby Central Bank agreed to accept accounts receivable in satisfaction of the obligations of Benchmark, Inc., under the promissory notes or the obligation of Parker Neely, Jr., under the guaranty agreement.
Neely argues that, at the very least, these two affidavits present a question of fact, for the trier of fact, as to whether there was an agreement entered into between Neely and Central Bank, and, therefore, that the court’s summary judgment was improper.
In Booth v. United Services Automobile Ass’n,, 469 So.2d 1281 (Ala.1985), this Court discussed the standard of proof applicable in summary judgment cases, stating:
The standard used by a trial court to determine if summary judgment should be granted is stated in Rule 56, Alabama Rules of Civil Procedure. In order for the court to grant summary judgment, it must find that there is no genuine issue of a material fact and that the movant is entitled to a judgment as a matter of law. [Emphasis supplied in Booth. ]
469 So.2d at 1282. In the case sub judice, Central Bank has the burden of proving that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. We are of the opinion that Central Bank has met its burden in this case, and, therefore, that the summary judgment was proper.
Even if Neely’s affidavit does produce some evidence that the agreement was entered into, he is still precluded from prevailing against Central Bank as a matter of law. It is undisputed in this case that the purported agreement was not in writing. This is not only evidenced by the Huffstut-ler affidavit, but by Neely himself in his response to Central Bank’s request for production of documents, wherein he stated:
The defendant’s agreement with Central Bank of the South was not reduced to writing and therefore no written document exists which confirms the terms of the oral agreement.
Thus, Neely is seeking to enforce a purported oral agreement between himself and the attorney for Central Bank. Section 34-3-21, Code of Alabama 1975, states:
*1011 An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court. [Emphasis added.]
According to § 34-3-21, the agreement that Neely claims he entered into with Central Bank is unenforceable because it was made after the action was filed and was not in writing. See also Reeves v. Orkin Exterminating Co., 457 So.2d 402 (Ala.1984).
In Daniel v. Scott, 455 So.2d 30 (Ala.Civ.App.1984), the Court of Civil Appeals addressed the issue of an attorney’s authority to settle a client’s claim, and stated:
An attorney cannot settle a client’s action or claim or prejudice a client’s rights without authorization from the client. The power to compromise a demand does not arise from the power to sue or from an attorney’s general authority which is usually limited in both duty and authority to the vigilant prosecution or defense of the rights of the client. The authority to settle is not incidental, but it is essential that an attorney have express, special authority from his client to do so. A person dealing with an attorney must ascertain the extent of the attorney’s authority to compromise the client’s claim. An attorney employed to represent a litigant in the prosecution or defense of a suit is a special agent of his client and has no implied or inherent authority or right to compromise and settle it.
455 So.2d at 32-33.
Thus, whether the purported oral agreement was entered into is not a question of a material fact, because Neely would be precluded by law from relying upon it, even if there indeed had been such an oral agreement. Therefore, the trial court’s grant of summary judgment in favor of Central Bank was correct, and that judgment is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.

. Benchmark, Inc., failed to appear to defend, and as a result the trial court entered a default judgment against it on February 7, 1985, from which no appeal has been taken.